UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GWENDOLYN PITTMAN                                      PLAINTIFF

VS.                          CIVIL ACTION NO. 3:22-cv-723-TSL-MTP

MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES "MDHS" IN CARE OF THE
STATE OF MISSISSIPPI, JOSHUA KOEGEL
in his professional and personal
capacities, DEFENDANT MARCI RUSHING,
JOHN DOES 1-5, JOHN DOE AGENCIES 1-5              DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant

Mississippi Department of Human Services (MDHS) to dismiss

pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of

Civil Procedure.  Plaintiff Gwendolyn Pittman has responded to the

motion.  The court, having considered the memoranda of authorities

submitted by the parties, concludes the motion should be granted.

Plaintiff, an employee of MDHS, filed her complaint in this

cause on December 12, 2023, purporting to assert causes of action

against MDHS and two supervisors, Marci Rushing and Joshua Koegel,

for race discrimination and retaliation, including hostile work

environment based on race and retaliation, under 42 U.S.C. § 1983

and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*;

violation of her Fourteenth Amendment due process rights; and

1

state law claims for bodily injury, negligent infliction of
emotional distress, intentional infliction of emotional distress,
negligence per se, and negligent hiring, retention and
supervision.  MDHS has moved to dismiss plaintiff's putative
claims against it, arguing that (1) her § 1983/Fourteenth
Amendment claims against it are barred by Eleventh Amendment
immunity; (2) her Title VII claims were not timely filed and are
therefore barred; (3) she is barred from pursuing any negligence-
based state law claims in this action as the exclusive remedy for
these claims is the Mississippi Workers' Compensation Act; (4) her
state law intentional infliction of emotional distress claim is
time-barred and/or does not state a viable claim on the facts
alleged; and (5) her remaining putative state law claims do not
exist as causes of action under Mississippi law.

    Eleventh Amendment Immunity:

    "The Eleventh Amendment bars citizens of a state from suing
their own state or another state in federal court, unless the
state has waived its sovereign immunity or Congress has expressly
abrogated it." Raj v. La. State Univ., 714 F.3d 322, 328 (5th
Cir. 2013) (citation omitted). "[A] state's Eleventh Amendment
immunity extends to any state agency or entity deemed an 'alter
ego' or 'arm' of the state." Perez v. Region 20 Educ. Serv. Ctr.,

307 F.3d 318, 326 (5th Cir. 2002).  This court has held in numerous cases that MDHS is an arm of the state of Mississippi and therefore, MDHS has Eleventh Amendment immunity absent waiver or abrogation.  Pollard v. Hinds Cnty. Dep't of Human Servs., No. 3:13cv324-DPJ-FKB, 2014 WL 5324384, at *2 (S.D. Miss. Oct. 17, 2014) (citation omitted); see also Williams v. Berry, 977 F. Supp. 2d 621, 628 (S.D. Miss. 2013) (MDHS is an arm of the state that has immunity under the Eleventh Amendment); Stewart v. Jackson County, Miss., Civil Action No. 1:07cv1270WJG-JMR, 2008 WL 4724009, *2 (S.D. Miss. Oct. 25, 2008) (MDHS is an arm of the State entitled to Eleventh Amendment immunity).

Plaintiff does not dispute this and she does not assert there has been a waiver or abrogation of MDHS's Eleventh Amendment immunity in this case.  In fact, plaintiff's response reflects a lack of understanding of the fundamental principle on which defendant's request for dismissal of these claims is based.  Her response does not even mention the Eleventh Amendment.  Instead, what is apparently intended to address defendant's assertion of Eleventh Amendment immunity is argument that runs on for several pages relating to qualified immunity, a completely different immunity than the Eleventh Amendment immunity asserted by MDHS.

3

The motion to dismiss plaintiff's § 1983 and due process claims will be granted.

Title VII

Before a plaintiff claiming employment discrimination may pursue a Title VII claim in federal court, she first must exhaust administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002; 42 U.S.C. § 2000e-5(e)(1). If the EEOC's investigation of the complaint results in a right-to-sue letter, the plaintiff has ninety days from receipt of that letter to file suit. Id.; 42 U.S.C. § 2000e-5(f)(1). "[T]he ninety-day limitation period is strictly construed," and "begins to run on the date that the EEOC right-to-sue letter is received." Id. (emphasis omitted). The ninety-day deadline is not a limit on the court's subject matter jurisdiction; it is a statute of limitations subject to equitable tolling, waiver, and estoppel. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).

Exhibit A to plaintiff's complaint seems to indicate that she filed two charges of discrimination with the EEOC before filing suit. The exhibit consists of a determination and notice of rights issued by the EEOC on July 5, 2022, on a Charge No. 423-

4

2020-01661, and a notice of right-to-sue letter issued August 29, 2022, on Charge No. 423202201532, that reflects it was sent via e-mail to plaintiff's counsel on August 28, 2022.  Absent equitable tolling, waiver or estoppel, therefore, plaintiff's complaint would be timely only if it were filed, at the latest, on or before November 27, 2022.  Plaintiff filed her complaint on December 15, 2022.

Plaintiff appears to argue that the ninety-day limitation period for filing her Title VII claim was equitably tolled by her filing of a pre-suit notice required by the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-11(1).  The court rejects her position.

The Fifth Circuit has recognized that courts may equitably toll Title VII's ninety-day limitations period in certain circumstances, but it has made clear that equitable tolling is to be applied "sparingly," Granger v. Aaron's, Inc., 636 F.3d 708, 712 (5th Cir. 2011), and is reserved for "rare and exceptional circumstances rare and exceptional circumstances where strict application of a statute of limitations would be inequitable," Baldwin v. Barre, 299 Fed. Appx. 444, 445, 2008 WL 4933763, at *1 (5th Cir. 2008) (citing Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)).  It is the plaintiff's burden to provide

5

justification for equitable tolling, <u>Granger</u>, 636 F.3d at 712, and she cannot secure relief if she has not diligently pursued her rights, <u>Baldwin</u>, 299 Fed. Appx. 445 (citing <u>Caldwell v. Dretke</u>, 429 F.3d 521, 530 n.23 (5th Cir. 2005)).

While there may be other grounds for equitable tolling of the ninety-day limitation period, the Fifth Circuit has specifically identified four potential bases: (1) the plaintiff timely filed suit in the wrong forum; (2) the defendant intentionally concealed the facts giving rise to the lawsuit; (3) the EEOC misled the plaintiff about his rights; and (4) "'a plaintiff has actively pursued judicial remedies but filed a defective pleading.'" <u>Jones v. City of Houston</u>, 756 Fed. Appx. 341, 348 (5th Cir. 2018) (quoting <u>Granger</u>, 636 F.3d at 712); <u>see also</u> <u>Melgar v. T.B. Butler Publishing Co., Inc.</u>, 931 F.3d 375, 380 (5th Cir. 2019). None of these is arguably implicated in this case. Rather, plaintiff's only argument for tolling the Title VII limitations period is the fact that state law prevented her from filing suit on her state law MTCA claims until she first provided ninety days' notice of her intention to do so.

As plaintiff notes, as a precondition to filing suit under the MTCA, a prospective plaintiff must file a notice of claim with the chief executive officer of the governmental entity at least

6

ninety days before suit, failing which she is barred from bringing the action. See Miss. Code Ann. § 11-46-11(1). The filing of a notice of claim within the MTCA's one-year limitation period tolls the statute of limitations on a plaintiff's MTCA claims for ninety-five days from the date the governmental entity receives the notice of claim, and for an additional ninety days after her claim is denied or the tolling period expires, whichever occurs first, id. § 11.46-11(3)(a), (b). Clearly, however, the fact that plaintiff had to first give notice before pursuing a claim under state law did not relieve her of Title VII's requirement that she file suit on her Title VII claim within ninety days of receipt of the EEOC's notice of right to sue. This is hardly a "rare" or "exceptional" circumstance that warrants equitable tolling. On the contrary, plaintiffs often pursue both Title VII and MTCA claims in a single action. Countless plaintiffs have done this successfully, and there is no reason this plaintiff could not have done so as well. She certainly could not reasonably have thought that the ninety days to file suit under Title VII would be extended solely because she wanted to also file claims under the MTCA. That is especially true, given that the EEOC's notice of right to sue not only warned plaintiff that her "right to sue based on this charge will be lost if you do not file a lawsuit in

court within 90 days," but also advised her that "[t]he time limit for filing a lawsuit based on a claim under state law may be different." Furthermore, plaintiff's ninety-day pre-suit notice period, which began when she hand-delivered her notice on August 12, ended on November 10, giving her more than two weeks during which she could have timely filed a complaint that included both her MTCA claims and timely Title VII claims.

To the extent that plaintiff may be suggesting in her response that MTCA's tolling provisions apply to her Title VII claim, she is mistaken. "When Congress has provided a federal statute of limitation for a federal claim ... state tolling ... provisions are not applicable." Brown v. Hartshorne Public School Dist. No. 1, 926 F.2d 959, 961 (10th Cir. 1991); see also Victor Foods, Inc. v. Crossroads Economic Dev., Inc., 977 F.2d 1224, 1227 (8th Cir. 1992) ("State tolling and savings provisions do not apply when Congress has provided a federal statute of limitations for a federal claim."). Accordingly, "[f]ederal tolling provisions apply in Title VII cases because Title VII carries its own statute of limitations." Ungureanu v. A. Teichert & Son, 2012 WL 1108831, at *4 (E.D. Cal. 2012). Courts have thus refused to apply a variety of state tolling or savings provisions to toll Title VII's limitation period, including in this very

circumstance.  <u>See</u> <u>Trizuto v. Bellevue Police Dept.</u>, 983 F. Supp. 2d 1277, 1284 (W.D. Wash. 2013) (holding that tolling provision of state pre-suit notice statute did not apply to Title VII claim, and observing that "[e]very Washington federal court to consider the issue has rejected application of the tolling provision … to Title VII's statute of limitations," and that "every district court within the Ninth Circuit has reached the same conclusion regarding any state-law tolling provision."); <u>cf.</u> <u>Ungureanu</u>, 2012 WL 1108831, at *4 (holding that state law providing for tolling of limitations period while employee is pursuing workers' compensation administrative remedy did not apply to toll Title VII limitations period).

Defendant's motion will be granted as to plaintiff's Title VII claim.

<u>State Law Claims</u>

The opening paragraph of plaintiff's complaint recites, "Plaintiff also seek state claims of mental anguish, bodily injuries, negligent infliction of emotional distress, intentional infliction of emotional distress, negligence per se, negligent hiring, negligent retention, negligent supervising."  In what is denominated as "COUNT TWO:  ALL CLAIMS LISTED IN THIS LAWSUIT INCLUDING THE STATE CLAIMS," plaintiff again asserts "each and

every state claim as sought in Plaintiff's complaint including but not limited to mental anguish, bodily injuries, … negligent hiring, negligent retention, negligent supervising, intentional infliction of emotional distress, negligent per se."

Defendant has moved to dismiss plaintiff's "mental anguish" and "bodily injury" claims on the basis that these are not causes of action at all but rather types of damages.  Plaintiff does not dispute this.  In fact, despite the explicit characterization of these in her complaint as "state law claims," she acknowledges in her response that these are merely types of damages she seeks in connection with her federal discrimination claims.

MDHS seeks dismissal of plaintiff's negligence-based claims for the reason that they are barred by the exclusivity of the Workers' Compensation Act as the remedy for workplace negligence. See Miss. Code Ann. § 71-3-9 (providing that "[t]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee ... and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death ... may elect to claim compensation under this chapter[.]").  Defendant is obviously correct.  See Schaffner Mnfg. Co., Inc. v. Powell, 331 So. 3d 11, 14 (Miss. 2022) (holding that workers'

compensation was employee's exclusive remedy for claims of direct negligence against employer for negligent hiring, retention, supervision, and general negligence for failing to provide a safe work environment).  Plaintiff's response does not address defendant's clearly meritorious argument on this point.  In fact, her response could reasonably be read as stating that she has not even alleged these state law claims.1  These claims will be dismissed.

Defendant has moved to dismiss plaintiff's intentional infliction of emotional distress claim on the bases that it is barred by the statute of limitations and/or fails to state an actionable claim in any event.  Defendant argues that the claim is time-barred under what it contends is an applicable one-year statute of limitations.  However, the Mississippi Supreme Court held in Geico Casualty Co. v. Stapleton, 315 So. 3d 464, 468 (Miss. 2021), that the three-year statute of limitations of Mississippi Code § 15-1-49 applies to claims for intentional infliction of emotional distress rather than the previously

_____

1 In her response, plaintiff, referencing what she calls defendant's "campaign of defense under the Worker Compensation law," declares that "the claims sought in the complaint are federal questions of disparate treatment, the U.S. 14th Amendment violations, race discrimination and Civil Rights violations inter alia."

applied one-year statute of limitations of § 15-1-35.  Defendant
also asserts, however, that plaintiff's allegations do not state a
viable claim for intentional infliction of emotional distress in
any event; and so far as the court can tell, plaintiff does not
contend otherwise in her response.  In fact, she does not mention
this claim or acknowledge defendant's arguments for dismissal.

    A claim for intentional infliction of emotional distress will
lie only where "the severity of the conduct at issue [is] 'so
outrageous in character, and so extreme in degree, as to go beyond
all possible bounds of decency, and to be regarded as atrocious,
and utterly intolerable in a civilized community.'"  Hays v.
LaForge, 333 So. 3d 595, 608-09 (Miss. Ct. App. 2022) (internal
quotation marks and citations omitted).  See also Collins v. City
of Newton, 240 So. 3d 1211, 1220 (Miss. 2018) ("defendants'
conduct must be wanton and willful, as well as evoke outrage or
revulsion.  The severity of the acts should be such that they are
atrocious and intolerable in a civilized society.").  "[L]iability
clearly does not extend to mere insults, indignities, threats,
annoyances, petty oppression, or other trivialities.").  Id.
(internal quotation marks and citation omitted).

     While intentional infliction of emotional distress can arise
in the workplace, "[a] claim for intentional infliction of

12

emotional distress will not ordinarily lie for mere employment disputes." Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So.2d 845, 851 (Miss. 2001); see also S. Farm Bureau Life Ins. Co. v. Thomas, 299 So. 3d 752, 759 (Miss. 2020) (holding that damages for intentional infliction of emotional distress "are usually not recoverable in mere employment disputes."). "Only in the most unusual of cases does the conduct move out of the 'realm of an ordinary employment dispute,' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." Thomas, 299 So. 3d at 759 (quoting Prunty v. Ark. Freightways, Inc., 16 F.3d 649, 654 (5th Cir. 1994)). "Viable claims for intentional infliction of emotional distress in a workplace environment 'usually are limited to cases involving a pattern of deliberate, repeated harassment over a period of time.'" Collins, 240 So. 3d at 1220 (quoting Pegues v. Emerson Elec. Co., 913 F. Supp. 976, 982 (N.D. Miss. 1996)).

Plaintiff alleges throughout her complaint that she was subjected to repeated harassment by her white supervisors, Marci Rushing and Joshua Koegel, creating a hostile work environment, but most of her references to alleged harassment are conclusory. The specific actions identified in the complaint on which this

13

claim may arguably be based are as follows: (1) Rushing and Koegel "added unpaid work load increases to Pittman that were not given to her White co-worker Shirlene Malone" and placed unreasonable work demands on her; (2) Rushing had an employee that plaintiff was training, Cindy Maye, sign off on plaintiff's work; (3) unidentified persons at some point in time were "speaking to other employees about plaintiff"; (4) MDHS contacted Kroger, her part-time employer, asking questions about her outside employment, which caused Kroger to be suspicious and to question plaintiff about why MDHS was asking these questions; (5) Koegel changed the duties of a position so she would be denied a promotion, which was given to a less-qualified person; (6) Koegel filed a "retaliatory counseling document"; and (9) Koegel gave her a "needs work" performance evaluation of 1.3, whereas another supervisor rated her work at 2.5, satisfactory.  In short, plaintiff alleges she was overworked and underpaid, especially as compared to her white co-worker, and that she was disrespected, undervalued, her job performance unjustly criticized, her integrity questioned, and that she was cheated out of a promotion.  None of these allegations, considered alone or in combination, rises to the level of the kind of extreme, outrageous conduct required to support a claim for intentional infliction of emotional distress.

14

See <u>Hays</u>, 333 So. 3d at 609 (quoting <u>Gardner v. Swedish Match N.</u> <u>Am. Inc.,</u> No. 2:04cv337-KS-JMR, 2006 WL 2483240, at *4 (S.D. Miss. Aug. 28, 2006) (citations and internal quotation mark omitted) ("[M]ere employment disputes not actionable through [IIED] claims include unfair criticism of job performance, poor evaluations, demands that employees quit or face termination based on fabricated reasons, harassment, and termination."). This claim will be dismissed, along with all her other claims against MDHS.

Conclusion

Based on the foregoing, it is ordered that the motion of MDHS to dismiss is granted.

SO ORDERED this 14th day of February, 2023.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

15